## VOSE v. UNITED STATES METAL PRODUCTS CO.

### (District Court, E. D. New York. July 18, 1914.)

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—WINDOW STRIPS.

   The Vose patent, No. 717,641, for metallic weather strips for windows was not anticipated, but discloses patentable novelty and invention; also *held* infringed.

2. EVIDENCE (§ 460*)—PAROL EVIDENCE—ASSIGNMENT OF PATENT—TITLE OF COMPLAINANT.

   Where a patent assignment, although ambiguous as originally written, by reason of an amendment or addition, was recorded as an assignment of a particular patent, as against an infringer, parol evidence may be received to show that such patent was the one intended.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2115–2128; Dec. Dig. § 460.*]

In Equity. Suit by Maria E. Vose against the United States Metal Products Company. On final hearing. Decree for complainant.

H. B. Philbrook, of New York City, for plaintiff.

Gerald Hull Gray, of New York City (Hartwell P. Heath, of New York City, of counsel), for defendant.

CHATFIELD, District Judge. Some of the facts in this case have been stated in the opinion just filed in the case of Vose v. Roebuck Co., 216 Fed. 523. The testimony as to the members of the Vose family, their relations, and the assignments in question have been stated in that opinion; and the findings in the present case must be the same.

[1] Assuming, therefore, that title is in the plaintiff to a sufficient extent to enable her to maintain this action, we come down to the defenses of invalidity, anticipation, and noninfringement.

Although expert testimony has been given upon the question of invalidity, but little discussion would seem to be necessary. The various patents stated, such as: J. E. Jones, No. 435,841, September 2, 1890; W. Nicol, No. 601,081, March 22, 1898; G. W. Golden, No. 623,365, April 18, 1899; P. L. Hedberg, No. 626,492, June 6, 1899; J. Horsfield, No. 632,922, September 12, 1899; J. M. Lane, No. 637,623, November 21, 1899; G. W. Golden, No. 690,417, January 7, 1902;— show different arrangements of flat and returned or spring-shaped strips of metal, so arranged as to fill the space between the casing

jambs and the sash in a window frame, with close contact from the springiness of the material itself, or from an additional part inserted to produce that result. Each one shows a different arrangement of the parts; and inasmuch as there is some novelty in each arrangement, each device was deemed to show invention, and the patent allowed. The art seems to be very narrow, for none of the patents show broad claims which would prevent the use of the same idea in a slightly different form. But two of the Vose patents have any bearing upon this case, viz., No. 717,641 and No. 752,729. A number of buildings in New York and vicinity have been shown to have been furnished by the United Metals Products Company with metallic window cases, having metallic weather-strips of a kind shown by the model furnished by the defendant. This form of weather-strip has an angle-iron shaped strip attached upon the side of the window (instead of upon the edge or end), and a corresponding flat strip upon the casing, both extending within the space formed between the jamb and the sash. In the Vose patent, a cross-section, shown by the following diagram, will best explain what is meant:

In the Vose patent, the two strips of metal are intended to be used in a sliding contact, in which the spring of the metal is depended upon to obviate friction, or in which a small lath or strip is inserted under the outer edge of the strip attached to the jamb. The angle-iron strip is attached directly to the side of the sash. No substantial difference in function or in novelty is shown by this method of attachment; but it makes the defendant's structure resemble in that respect the Golden patent.

The defendant contends that no patentable novelty and no infringement is shown. The defendant's expert has called attention to the mechanical differences and similarities in the patents above referred to. The defendant's device shows slight changes from that shown by Vose, and might of itself be patentable if the Patent Office could find novelty in such slight changes, and should limit the Vose patent to the exact form shown in the drawings; but the claims of the Vose patent would seem to cover the defendant's structure.

Claim 2, of No. 717,641, is as follows:

"In a window, the combination of a casing provided with grooves or tracks, a sash adapted to move within said grooves or tracks, angle-shaped strips secured to said sash, and unbent flat strips located in said grooves or tracks and forming bearing surfaces for said sash, one portion only of said strips in the grooves being affixed to the casing, the free portion being adapted to co-operate with the angle-shaped strips to form a substantially dust-proof joint between the sash and casing, substantially as and for the purposes set forth."

Evidence has also been offered by defendant to show that the models produced on behalf of the plaintiff were not manufactured until long

subsequent to the time at which Vose was said to be experimenting upon this particular device. It is sufficient to say that the testimony does not conclusively show that the Vose model was not constructed at about the time indicated by the plaintiff's witnesses.

As to the question of patentable novelty, the patent to Golden, supra, is given as the closest reference by the defendant's expert, although this patent was not referred to in the file wrapper. It appears that the Golden patent secured a closed and tight joint by the use of two strips, one of which was to be attached to the sash and was in the form of an angle-iron, while the other was attached to the casing and had the part extending into the space between the sash and the case bent over in a V shape, within which V the extending part of the strip attached to the sash, slides. The following drawing will show what is meant:

The tongue and groove feature is the novel idea of this patent; but the specifications and drawings show plainly that the V-shaped piece is intended to, in a sense, furnish the element of a spring, such as is an essential feature in the Horsfield and Nicol patents. Vose makes no use of this spring or pressure idea, except in so far as the resilient qualities of the strips make it possible to avoid friction and binding, and yet have the parts remain close together. It would seem that the idea of forming a strip with two flat and unbent pieces (except as one of them should be shaped in the form of an angle-iron for attachment to the rabbeted sash), which would be a patentable invention over the Golden and earlier patents; but in the form presented by certain physical models on the trial (in which the strip attached to the jamb was not lifted by a lath or thin strip and in which, therefore, no space was provided for the passage of the two strips except as they were distorted out of shape by pressure upon each other), the weather-strip is unworkable. It would be impracticable, in either a metallic or a wooden window frame, to attempt to place a flat strip at such a delicately adjusted angle as would prevent friction. The testimony of the defendant's expert that the difference between the defendant's structure and the plaintiff's patent is sufficient to show noninfringement loses its force when we consider his testimony that the Vose device does not show patentable novelty by much greater changes from the prior art.

The plaintiff presented two other models, one of brass and one of zinc; and considerable testimony was taken with respect to the brass model, to determine the date at which such strips of brass could be obtained in the market. The witnesses for the plaintiff testified that this model was made before the date of application for the patent in suit. The defendant claims that no brass of this nature could have then been obtained, as the ordinary mercantile brass, with the proportion of ingredients shown by the metal in this model, was according to a formula not in use until several years later. They also present what is hardly more than a suggestion in the testimony, to the effect that Clifton Vose and John W. Rapp, formerly the president of the de-

fendant company, who had business relations with respect to metallic weather strips, were experimenting with a form of strip like this model, and that there was some suggestion of applying for a patent therefor, but that it was abandoned. The fact seems to be that the defendant used and continues to use, and has placed upon many buildings, weather-strips actually like these two models, and in which a cross-section is shown by the following diagram:

If this was a patentable invention over the patent in suit, and if, after Mr. Vose's disappearance, Mr. Rapp allowed the defendant to use this form of device without attempting to get a patent, then, of course, the plaintiff could not recover under charge of infringement of a different patent, even though Clifton Vose might have been entitled to the rights of that invention, if a patent had been taken out, and even though the defendant may be using Vose's idea in the improvement of his own patent.

It appears from the testimony that the structure used by the defendant solves practically the difficulties which the Vose patent in suit was intended to meet, and furnishes a weather-strip which is usable and marketable in large quantities. The principle of this device is in all respects like that of the Vose patent in suit, except that the flat strip attached to the jamb or casing has an off-set which lifts the outer edge of the strip to the same extent that the entire strip would be raised by the lath or strip of wood, mentioned in the Vose patent. A corresponding rabbeting of the window sash is provided, so that the angle-iron can be set closer to the sash, and so that the entire space taken up by the strips will be less than would otherwise happen. It is evident that the defendant is thus using a device which, if not an infringement of the Vose patent, was an improvement thereon, and apparently was conceived, wholly or in part, by Vose. If this were patentable and Vose were the inventor, no one representing the defendant could claim it as his invention; and they have been and are using Vose's idea without legal right to do so; but that question cannot be determined in this suit. It merely furnishes an explanation of the source of this design and a probability of the time when the models were made. The testimony of the witnesses for the plaintiff would seem to be correct, so far as their identification of the models made by Mr. Vose is concerned; but there is room for error on their part in testifying that these models were made before the issuance of the patent. If, therefore, the models were made and experiments were carried on after the issuance of the patent, and if the device placed upon buildings by the defendants is an application by Vose of his own idea, then the use of these ideas would constitute infringement, if the claims of the patent are readable upon this structure, and if it is merely an equivalent for the patented device instead of a further invention.

It would seem that the change made by adding the angle-iron without rabbeting the side of the sash was covered by Claim 2. Rabbeting

the sash upon its face would be a mere mechanical improvement, even in this limited art, where novelty seems to lie in any new arrangement of parts. The change from a flat, unbent strip, lifted, if necessary, by a small piece of wood, in order to furnish freedom of movement for the strip passing underneath, to a shaped strip with the small shoulder or off-set, is a more serious proposition. Inspection of the patents in the prior art, however, would indicate that the word "flat," as used by Vose in his patent, meant that the strip should not be bent back so as to form an angle or strip of two thicknesses, or to form a spring. Vose's purpose was to simplify the construction; and his insertion of a small off-set to prevent binding and to allow at the same time close contact of the parts would seem, with respect to the other changes, to be a mechanical improvement that would be suggested upon use; and therefore the defendant's structure should be held to infringe the patent in suit.

As between Vose and his mother, some question over the additions and amendments to the assignments might have furnished greater difficulty in determining whether Exhibit 1 was an assignment of the patent actually issued upon January 6, 1903, but it has been recorded as such assignment. The evidence shows satisfactorily that Mr. Vose did transfer his property rights in this patent to his mother, and no evidence to the contrary has been offered.

The objection to the use of parol testimony to vary the terms of the written instrument would not seem to prevent parol testimony as to the identity of patent rights, referred to in a paper actually on file and questioned by a third party, who is bound by the notice of the record if that record is good. The mere suggestion of testimony or argument, based upon the reference in the assignment to the application for a patent about to be made, is not sufficient to defeat the plaintiff's rights.

The other two patents in suit (Nos. 752,729 and 814,893) have not been urged by the plaintiff, although one of these (patent No. 752,729) seems to present very closely the exact modification or mechanical change which was necessary to make the device of the Vose patent like the defendant's structure. The date of the application for this patent was the 11th day of February, 1903, and is so close to the times under consideration in the evidence that the models (Exhibits Nos. 8 and 9) may have had something to do with the taking out of the second patent, or the second patent may have suggested the modification of the first patent (No. 717,641), and have inspired the construction of these models; but as no infringement of these patents is urged, the decree must stand upon the first patent alone and for the the infringement of that patent.

The plaintiff may have a decree.